Opinion issued July 25, 2002














In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01073-CV






THE ATTORNEY GENERAL OF TEXAS, Appellant


V.


CHARNER ANDERSON STEVENS, Appellee






On Appeal from the County Court at Law No. 1

Galveston County, Texas

Trial Court Cause No. 88FD1365








O P I N I O N

 In reducing child support arrearages to a money judgment, the trial court
credited appellee, Charner Anderson Stevens, $7,200 based on his adult son's receipt
of a Social Security dependent's disability benefits in that amount. Appellant, the
Attorney General of Texas (the Attorney General), asserts it was error to credit
Stevens for the $7,200 government payment. We reverse and remand.

Background 

 Stevens was ordered to pay child support for his two children when he and his
wife divorced in 1989. In 1996, an order holding Stevens in contempt for failing to
pay child support was entered by the court. Stevens was ordered to pay weekly
towards his arrearages, in addition to his ongoing support obligation. Stevens'
ongoing child support obligation ended in March 1997, but payments towards the
arrearages were still required. Then, in June 1997, Stevens became physically
disabled.

 Stevens' unpaid arrearages, totaling $10,166.23, were reduced to a money
judgment in February 1998. The court ordered Stevens to apply any payments he
received from the Social Security Administration towards this judgment. The trial
court next re-instated Stevens' obligation to pay ongoing child support for the support
of his youngest child. These new obligations were properly paid until this child
support obligation ended in May 1999. 

 The Social Security Administration, on August 26, 1999, ruled that Stevens
was disabled and had been so since June 1997. Stevens received a lump-sum
payment from the Social Security Administration covering his period of disability
from June 1997 to August 1999. Also, his younger son, who had turned 18 years old
on October 20, 1998, received a check for $7,200 directly from the Social Security
Administration under the dependent's disability benefits program. 

 The status of the $7,200 payment to the son was put before the trial court when
the Attorney General filed a motion to reduce the unpaid child support to a money
judgment. It was undisputed that the amount owed, if the $7,200 payment was not
taken into account, was $11,256.07. This included the unpaid balance and accrued
interest on the previous judgment for $10,166.23. After a hearing on the matter, the
trial court concluded that the $7,200 should be credited against the arrearages. 
Judgment was rendered against Stevens for $4,056.07 on April 20, 2000. Findings
of fact and conclusions of law were later filed.

Standard of Review The Attorney General is appealing the ruling made in response to its motion
to reduce unpaid child support to judgment. When presented with such a motion, a
trial court "shall confirm the amount of arrearages and render one cumulative money
judgment." Tex. Fam. Code Ann. § 157.263(a) (Vernon 1996). (1) The Attorney
General is, in essence, challenging the court's confirmation of the arrearages amount. 
We review the court's ruling under an abuse of discretion standard. In re M.E.G., 48
S.W.3d 204, 207 (Tex. App.--Corpus Christi 2000, no pet.); see Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990). The test for abuse of discretion is whether the trial
court acted without reference to any guiding rules or principles; in other words,
whether the act was arbitrary or unreasonable. Worford, 801 S.W.2d at 109. A trial
court's failure to analyze or apply the law correctly constitutes an abuse of discretion. 
Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992).Special Credit, Not Child Support Payment at Issue

 The Attorney General notes that the court's child support orders prescribed a
method of payment that was not followed when the child received the $7,200
payment from the Social Security Administration. Stevens' arrearages accrued under
both the original 1989 Decree of Divorce order and a February 1996 order that
modified the prior decree. Both of these orders stated that all payments were to be
sent to the Galveston County District Clerk's Child Support Division office and then
remitted by that office to the mother. Thus, the Attorney General argues, the $7,200
was not a proper child support payment. The trial court and Stevens appear to agree
with that conclusion.

 Stevens does not now argue, nor did he argue at trial, that the $7,200 was a
proper child support payment-- just as if he had mailed a check to the county child
support office. Rather, he argues that we should follow the other courts in Texas and
throughout the nation that have given child support obligors special credit for Social
Security dependent's disability payments. 

 Likewise, the trial court characterized the $7,200 not as an actual child support
payment, but as a "credit" that Stevens was entitled to "as a matter of equity and law." 
The court's order did not state that payments could now be made directly to the son,
rather than through the county child support registry as previously ordered. In fact,
the order granting the credit also ordered Stevens to pay all remaining child support
through that same county registry.

 Thus, we need not decide whether Social Security dependent's disability
benefits could ever be construed as a true child support payment because, here, the
court's order clearly did not treat it as such. We turn, instead, to the issue properly
presented before us--namely whether the trial court, in rendering its money
judgment, could grant Stevens a $7,200 special credit against his arrearages based on
the dependent's disability payment made directly to his son.

Validity of Social Security Dependent's Disability Credit

 The Attorney General argues that the Family Code provides the only offsets
and credits available to one who owes child support, and the trial court did not have
the discretion to grant a credit that was not outlined in the code. See Tex. Fam. Code
Ann. §§ 158.008, 157.262(b) (Vernon 1996). (2) Stevens acknowledges that the Family
Code makes no specific provision for crediting Social Security dependent's disability
payments against arrearages; however, he points to cases from the Texarkana and San
Antonio courts of appeals where credits have been granted for Social Security
payments and urges us to follow their lead. See In re Rich, 993 S.W.2d 272, 274-75
(Tex. App.--San Antonio 1999, no pet.) (holding parent entitled to credit for any
Social Security disability benefits paid to child as a result of parent's disability); In
re Allsup, 926 S.W.2d 323, 327-28 (Tex. App.--Texarkana 1996, no writ) (holding
parent has right to credit for Social Security retirement payments made for child). We
will first look to the Family Code for guidance and then consider the case law.

Family Code Provisions

 Family Code section 157.262(b) states, "The money judgment for arrearages
rendered by the court may be subject to a counterclaim or offset as provided by this
subchapter." Tex. Fam. Code Ann. §157.262(b) (Vernon 1996) (emphasis added). 
We interpret this to mean that subchapter F, entitled "Judgment and Interest," in
which section 157.262 is located, should contain the only provisions for
counterclaims and offsets available to the trial court. Surprisingly, the subchapter
contains no description of any applicable counterclaims or offsets. 

 This does not, necessarily, make 157.262(b) irrelevant surplusage. The statute
still makes it clear that a trial court may not go outside the bounds of the subchapter
to fashion counterclaims and offsets when rendering a money judgment, and it
prescribes a location for future counterclaims and offsets. Our conclusion that
subsection (b) was intended to limit the availability of counterclaims and offsets is
buttressed by the limiting nature of the preceding subsection (a) which states, "In a
contempt proceeding or in rendering a money judgment, the court may not reduce or
modify the amount of child support arrearages." Tex. Fam. Code Ann. §157.262(a)
(Vernon 1996). (3) Also, other courts have noted that section 157.262 limits a court's
discretion when rendering a money judgment on arrearages. See Curtis v. Curtis, 11
S.W.3d 466, 471 (Tex. App.--Tyler 2000, no pet.) (quoting Williams v. Patton, 821
S.W.2d 141, 153 (Tex. 1991) (Phillips, C.J. dissenting)) ("[T]he trial court acts as a
'mere scrivener' who 'mechanically' tallies the amount of arrearages."); Lewis v.
Lewis, 853 S.W.2d 850, 854 (Tex. App.--Houston [14th Dist.] 1993, no writ) (same)
(referring to former Family Code § 14.41).

 The Attorney General presumes that offsets and counterclaims under section
157.008, not located in subchapter F, could also apply. Section 157.008(d) states,
"An obligor who has provided actual support to the child during a time subject to an
affirmative defense under this section may request reimbursement for that support as
a counterclaim or offset against the claim of the obligee." Tex. Fam. Code Ann.
§157.008(d) (Vernon 1996). The relationship, if any, between sections 157.008 and
157.262 is not entirely clear. (4) However, even if the "actual support" offset of
157.008(d) were applicable to our case, the $7,200 credit would not qualify because
Stevens did not show that the support was provided "to the child during a time subject
to an affirmative defense under [section 157.008]" as required. (5) Id. In sum, nothing
in the Family Code provides for the kind of credit given by the trial court, and section
157.262(b) indicates that counterclaims and offsets must be found exclusively in the
code. (6)

Texas Case Law Where Credits Granted

 As we have shown, granting the $7,200 credit was not authorized under the
Texas Family Code. However, Stevens' argument to the trial court was not
predicated on statutory law, but on case law from other courts. The key cases for our
consideration are In re Allsup, 926 S.W.2d 323 (Tex. App.--Texarkana 1996, no
writ) and In re Rich, 993 S.W.2d 272 (Tex. App.--San Antonio 1999, no pet.). 

 In Allsup, the Texarkana Court of Appeals considered how courts nationwide
have dealt with Social Security dependent's disability payments before it affirmed a
trial court's decision to grant a credit for Social Security retirement payments made
to the obligor's ex-wife for the benefit of his child. Allsup, 926 S.W.2d at 327-28;
see also Michael A. DiSabatino, Annotation, Right to Credit on Child Support
Payments for Social Security or Other Government Dependency Payments Made for
Benefit of Child, 34 A.L.R. 5th 447(1995) (cited by Allsup) (providing nationwide
review of the issue). The Allsup court noted a concurring opinion from the
Fourteenth Court of Appeals wherein Justice Hudson stated, "I would hold that social
security disability payments made on behalf of a disabled parent for the benefit of his
or her children should be credited toward satisfaction of court ordered child support
payments." Ex parte Barlow, 899 S.W.2d 791, 799-800 (Tex. App.--Houston [14th
Dist.] 1995, no writ) (Hudson, J. concurring). Allsup, the Barlow concurrence, and
the DiSabatino annotation were then cited by the San Antonio Court of Appeals when
it held in Rich that a trial court erred, as a matter of law, by denying an obligor child
support credit for Social Security disability benefits paid to the mother for the benefit
of the child. Rich, 993 S.W.2d at 274-75.

 The Texarkana court discussed some of the policy considerations involved in
deciding if a credit is warranted. Allsup, 926 S.W.2d 323, 327-28. Additionally,
Allsup, Rich, and Justice Hudson concurring in Barlow all note that other states have
allowed credits for disability payments. However, none of these opinions consider
the binding provisions of the Family Code. Based on our previous analysis of the
Family Code, especially section 157.262, we must disagree with these decisions.

 Although our decision is based on statutory interpretation, we also note there
are equitable factors that favor denying Stevens this credit. Presumably, the mother
provided the necessary financial support for her child during the time that Steven's
arrearages accrued. The payment of arrearages serves a dual purpose of (1) fulfilling
a previously unfulfilled duty to the child, and (2) reimbursing the custodial parent for
extra resources expended to support the child. See Williams v. Patton, 821 S.W.2d
141, 145 (Tex. 1991) ("The payment of arrearages compensates for the wrong to the
child at least as much as it reimburses the custodial parent for monies spent on the
child."). Giving credit to Stevens for a Social Security dependent's disability
payment made directly to his adult son may arguably serve the first purpose, but it
ignores the second. 

 While there may be valid reasons to offset child support arrearages based on
Social Security dependent's disability payments, that is a matter for the Legislature's
consideration. (7) We hold that the trial court did not have the discretion to grant the
$7,200 credit.

 We reverse the judgment with respect to the $7,200 credit and remand this
cause to the trial court for further proceedings consistent with this opinion. 

 








 Michael H. Schneider

 Chief Justice

Panel consists of Chief Justice Schneider and Justices Taft and Radack.

Publish. Tex. R. App. P. 47.
1. The judgment of the court was entered on April 20, 2000, and we will
apply and cite to the law in effect at that time. Some changes were made
to cited sections of the Family Code during the 2001 legislative session. 
These changes would not affect the outcome of this case, but they do
affect how some subsections are numbered. If the current law is
different or cited differently, we will note that in footnotes. 
2. In 2001, the Legislature added several new subsections to section
157.262 and redesignated subsection (b) as subsection (f). Act effective
May 28, 2001, 77th Leg., R.S., ch. 392, § 3, 2001 Tex Gen. Laws 719,
720. The amendments applied only to motions filed after September 1,
2001, and, even if applicable, would not affect this case. See id. at § 4. 
The text of former subsection (b) was not changed. See id. at § 3; Tex.
Fam. Code Ann. §157.262(f) (Vernon Supp. 2002). For purposes of
this opinion we will cite to subsection (b) to reflect the law in effect at
the time. 
3. After the 2001 Legislature, the subsection now reads, "Except as
provided by this section, in a contempt proceeding or in rendering a
money judgment, the court may not reduce or modify the amount of
child support arrearages." Tex. Fam. Code Ann. §157.262(a) (Vernon
Supp. 2002) (emphasis added).
4. Prior to 1995, the predecessors of these two provisions were both
contained in section 14.41, making it clear that the "actual support"
offset should be applied, if applicable, before a court rendered a money
judgment for arrearages. See Lewis, 853 S.W.2d at 853-54. Much of
the Family Code was recodified in 1995. Act effective April 20, 1995,
74th Leg., R.S., ch. 20, § 1, 1995 Tex Gen. Laws 113. In the
recodification, section 14.41 was repealed and the "actual support"
offset, section 157.008(d), was not included in Title 5, subchapter F with
section 157.262. At least one court, though, has held that section
157.008 remains the source of the offsets described in 157.262. See
Curtis, 11 S.W.3d at 471-72 ("[S]ection 157.262 prohibits the reduction
of a child support arrearage except by offset or counterclaim. Section
157.008 then provides the method for obtaining an offset against child
support arrearages.").
5. Under section 157.008, an obligor may plead as an affirmative defense
to a motion for enforcement of child support that the obligee voluntarily
relinquished actual possession and control of the child to the obligor for
a time in excess of the obligor's court ordered periods of possession. 
Tex. Fam. Code Ann. §157.008(a) & (b) (Vernon 1996). Additionally,
an obligor may plead as an affirmative defense to an allegation of
contempt or a violation of a condition of community service requiring
payment of child support that he or she lacked the ability to provide,
lacked property that could be sold, unsuccessfully attemped to borrow
funds, and knew of no source from which money could be borrowed. 
See Tex. Fam. Code Ann. § 157.008(c) (Vernon 1996). Stevens
pleaded neither of these affirmative defenses. Because he did not, we
are not faced with the question of whether the Social Security
dependent's disability payment could be considered "actual support."
6. Describing the $7,200 as a "credit" rather than an "offset" or
"counterclaim" does not affect our analysis. In this instance, the terms
are synonymous. 
7. We note that the Legislature was not unaware of the impact that
disability payments might have on child support issues. Section 154.132
of the Family Code, added in 1999, requires courts to subtract the
"amount of benefits or the value of the benefits paid to or for the child
as a result of the obligor's disability" when applying the child support
guidelines to a disabled obligor. Tex. Fam. Code Ann. § 154.132
(Vernon Supp. 2002). These child support guidelines are not applied
when a court renders a money judgment on unpaid arrearages.